**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Xavier Antonio Cervantes, Sr.,            Civ. No. 07-4738 (DWF/JJK)

      Petitioner,
v.                                                              **REPORT AND**
                                                                             **RECOMMENDATION**
Warden M. Cruz,

      Respondent.

---

Xavier Antonio Cervantes, Sr., Petitioner, *pro se,* 17581-045, Leavenworth USP, P. O. Box 1000, Leavenworth, KS 66048

Tricia Tingle, Assistant U.S. Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN  55415, for Respondent.

---

This matter is before this Court on Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2241 (Doc. No. 1).  The matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1.  For the reasons discussed below, this Court recommends that Petitioner's Application for Habeas Corpus Relief be denied.

      **I.**      **PROCEDURAL AND FACTUAL BACKGROUND**

Xavier Cervantes ("Petitioner") is a federal inmate currently designated to the Federal Prison Camp in Duluth, Minnesota ("FPC Duluth").  (Doc. No. 5, Decl. of Angela Buege ("Buege Decl.") ¶ 3, Attach. A.)  Petitioner was sentenced

1

on September 28, 2005, to 120 months of imprisonment by the U.S. District Court, Western District of Missouri for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(a).  (*See* Doc. No. 1 at 2.)  In his Judgment and Commitment Order ("J&C"), Petitioner was ordered to pay a criminal monetary penalty of a fine of $10,000 in connection with his sentencing.  (Buege Decl. ¶ 4, Attach. B.)  The J&C stated that the "Defendant must pay the total criminal monetary penalties under the schedule of payments set forth in the Schedule of Payments." (*Id.*)  The Schedule of Payments, which is part of the J&C, includes the following special instructions from the Court regarding Petitioner's payment of the criminal monetary penalty:

> If unable to pay the full amount immediately, the Defendant shall make payments of at least ten percent (10%) of earnings while incarcerated and monthly payments of $100 or 10% of gross income, whichever is greater, while on supervision.  Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

(*Id.* at 7.)

Petitioner arrived at FPC Duluth on May 17, 2006.  (Buege Decl. ¶ 4.)  After Petitioner began serving his sentence, the Bureau of Prisons ("BOP"), pursuant to its authority under the Inmate Financial Responsibility Program ("IFRP"), developed a financial plan with Petitioner so that he could meet his

2

obligation to pay the $10,000 criminal monetary penalty which had been imposed as part of his sentence.  The IFRP is a voluntary program utilized to assist inmates in developing a financial plan to meet financial obligations.  Thus, 28 C.F.R. § 545.10 provides as follows:

> The Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations.  As part of the initial classification process, staff will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility.

In December 2006, six months after he began his sentence, Petitioner agreed to a payment plan of $50 per month, an amount which would be debited from his inmate trust account.  (Buege Dec. ¶ 6.)  The funds in Petitioner's inmate trust account included Petitioner's earnings for work done while in prison as well as any monies sent to him by outside sources such as relatives and friends.  (*Id.*)  From January, 2007, through June, 2007, Petitioner received approximately $1,440.19 from these various sources.  (*Id.*)  The BOP reevaluated his financial situation at that time and determined that he could pay more towards his financial obligation.  (*Id.*)  Petitioner signed a contract on May 23, 2007, to pay $75 a month as part of his financial plan.  However, that increase has not yet been implemented and, according to the prison records, Petitioner continues to pay $50 a month.  (*Id.*, ¶ 6 n.3.)

3

In his habeas petition, Petitioner contends that, pursuant to the J&C, he should only make payments that equal 10% of his prison earnings, excluding monies received from outside sources.  He bases this claim on the language in the Order, quoted above, which says that:  "If unable to pay the full amount immediately, the defendant shall make payments of at least 10% of earnings while incarcerated[.]"  (Buege Decl. ¶ 6, Attach. B.)  He also claims that the BOP does not have the authority to schedule a payment plan.  He requests that this Court issue an order notifying the BOP that the J&C does not require Petitioner to pay his fine immediately.  He claims that the issuance of such an order would permit him to withdraw from the IFRP if he so desires, without consequences, and/or permit him to make payments of 10% of his prison earnings, excluding monies received from outside sources.  (Doc. No. 1.)

## II.   DISCUSSION

**A.   The BOP has the authority to schedule a payment plan under the IFRP.**

The IFRP was developed from the requirements of the Victim and Witness Protection Act of 1982, Victims of Crime Act of 1984, Comprehensive Crime Control Act of 1984, and the Federal Debt Collection Procedures Act of 1990, to facilitate the diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations.  When an inmate has a financial obligation, BOP staff is required to help that inmate develop a financial plan and monitor the

4

inmate's progress in meeting that obligation. 28 C.F.R. § 545.11; *see also* United States Department of Justice, Federal Bureau of Prisons, Program Statement 5380.08, *Inmate Financial Responsibility Program* ¶ 8 (Aug. 15, 2005), http://bop.gov/DataSource/execute/dsPolicyLoc. The staff must review an inmate's financial obligations, using all available documentation, including, but not limited to the Presentence Investigation Report (PSI) and the J&C Orders. 28 C.F.R. § 545.11(a). Absent direction from the court concerning when an obligation should be collected, payments may begin during an inmate's period of incarceration. *Id.*

Participation in the IFRP is not mandatory. However, non-participation will be considered as a refusal to participate in the program. 28 C.F.R. § 545.11(d). If an inmate refuses to participate in the IFRP, or to comply with the provisions of his financial plan, he will not be considered for various program privileges, such as furloughs, outside work details, and community-based programs. *Id.* In addition, failure to participate in the IFRP may subject an inmate to a lower housing status (dormitory, double bunking, etc.) and a spending limit in the commissary. *Id.*

The Eighth Circuit addressed the BOP's discretion to collect fines and restitution pursuant to the IFRP in *Matheny v. Morrison*, 307 F.3d 709 (8th Cir. 2002). In *Matheny*, two inmates claimed that the BOP, through the IFRP, illegally

set the amount and timing of payments toward the financial obligations that were part of their federal criminal sentences. One inmate, Mahlon Matheny, had been ordered to pay a $15,000 fine immediately, and to "pay any remaining fine balance on a payment schedule of not less than $260 per month with the first payment due within 30 days of the Defendant's release from custody." *Id.* at 711. While serving his sentence, the BOP, utilizing the IFRP, deducted $25 from Matheny's prison earnings each month as payment toward the fine. *Id.* Another inmate, James Robinson, was ordered as part of his sentence to pay approximately $287,000 in restitution. *Id.* The sentencing court ordered that restitution be paid immediately, with special instructions that Robinson was required to make periodic payments against his restitution obligations equaling 20% of his gross pay during his supervised release. *Id.* During his incarceration, the BOP was withdrawing $25 a month from his prison funds pursuant to the IFRP. *Id.*

      The Eighth Circuit held that it is within the BOP's discretion to place an inmate in the IFRP payment plan when the inmate's monetary penalties were ordered due immediately. *Id.* at 712. "The immediate payment directive is generally interpreted to require payment to the extent that the defendant can make it in good faith, beginning immediately." *Id.* at 712 (citing *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999)) (internal quotations omitted); *Montano-*

6

*Fiqueroa v. Crabtree*, 165 F.3d 548, 550 (9th Cir. 1998); *United States v. Jaroszenko*, 92 F.3d 486, 492 (7th Cir. 1996).

The fact that payment was due "immediately" solves any problem of improper delegation of authority from the district court to the BOP, a problem which was found to exist by the Seventh Circuit where the court orders "equal monthly payments" and fails to specify how much must be paid monthly.  *See United States v. Pendiello*, 184 F.3d 682, 688 (7th Cir. 1999); *United States v. Ahmad*, 2 F.3d 245, 248-49 (7th Cir. 1993).  Because, in *Matheny*, the Eighth Circuit held, as other circuits have,[1] that the BOP has the discretion to place an inmate in the IFRP when the sentencing court has ordered immediate payment of a court-imposed fine, Petitioner's argument that the BOP lacked authority to place him on a payment schedule must fail.

---

[1]     *See McGhee*, 166 F.3d at 886 (holding that where a sentencing court imposed a fine and special assessment due "in full immediately," the BOP's payment schedule pursuant to IFRP did not conflict with sentencing court's immediate payment order); *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998) (holding that where the judgment sets only the amount of the fine and not the method of payment, a defendant's fine is due immediately under 18 U.S.C. § 3572(d), and prisons have the authority to maintain work programs that require inmates to pay restitution); *John Paul v. Thornburgh*, 898 F.2d 849, 851 (2d Cir. 1990) (holding that the BOP has authority to implement the IFRP); *James v. Quilan*, 866 F.2d 627, 631 (3d Cir. 1989) (holding that the IFRP does not deprive inmates of their due process rights).

**B.     The Payment Plan adopted for Petitioner under the IFRP was proper and his claim for habeas relief should be denied.**

Petitioner challenges the IFRP payment schedule which requires him to pay $75 per month towards his $10,000 fine because this IFRP plan allegedly violates the district court's schedule of payments in the J&C. He argues that the J&C means that: (a) the $10,000 fine is not immediately due; (b) he should not have to make any payments in excess of 10% of his prison earnings; and (c) he should not be required to participate in the IFRP. (Doc. No. 1.)

Petitioner's first two arguments are defeated by the plain language of the J&C which says that: "If unable to pay the full amount immediately the defendant shall make payments of *at least* 10 percent of earnings while incarcerated[.]" (Buege Decl. ¶ 4, Attach. B. (emphasis added).) The J&C clearly contemplates that the fine will be paid immediately unless the full amount can not be paid at once; it does not, in lieu of immediate payment, provide for payments in installments set by the court. Moreover, it specifically anticipates that payments will likely be made through the IFRP during Petitioner's imprisonment: "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. *All criminal monetary penalties, except those made through the Federal Bureau of Prisons Inmate Financial Responsibility Program, are made to the clerk of the court.*" (*Id.* (emphasis added).) Thus, the BOP has not usurped

8

the district court's sentencing authority by utilizing the IFRP program in this case. *See Matheny*, 307 F.3d at 712 (holding that the BOP has discretion to place inmates in IFRP where the sentencing court ordered immediate payment of court-imposed fines); *Crabtree*, 162 F.3d at 550 (holding that where the judgment sets only the amount of a fine and not the method of payment, defendant's fine is due immediately under 18 U.S.C. § 3572(d), and prisons have the authority to maintain work programs that require inmates to pay restitution).

      The J&C does not require that the amount of the payments made by petitioner through the IFRP plan must be limited to 10% of petitioner's prison earnings. The J&C says that petitioner shall make payments of "*at least*" 10% of earnings while incarcerated. (Buege Decl. ¶ 4, Attach. B (emphasis added).) The 10% of earnings is the minimum amount of money that Petitioner is required to pay pursuant to the J&C. This does not mean that the BOP does not have authority to devise a payment plan with Petitioner of more than 10%. The BOP periodically reviews with Petitioner the amount of money deposited in Petitioner's trust account from all sources and then adjusts the monthly payments that Petitioner submits toward satisfaction of his financial obligations, and assuming Petitioner agrees to pay this amount and thus take advantage of the benefits he can obtain from being an IFRP participant such as furloughs, outside work details, better housing status and community privileges. *See* 28 C.F.R. § 545.11.

Petitioner challenges the IFRP payment schedule because he claims that he has been, in effect, coerced into participating in a program labeled as voluntary "by threatening him with incur (sic) consequences if he decides to withdraw from the program." (Doc. No. 1 at 3.)  This seems to raise a due process claim about the IFRP program as applied to Petitioner.  When Petitioner signed the IFRP contract setting the amount of payment he would make, however, he was provided information regarding the potential consequences of a refusal to participate in the IFRP plan, so he was afforded adequate notice of the consequences of not participating in the IFRP.  (Buege Decl. ¶ 5.)  None of the consequences of an inmate's refusal to participate in the IFRP, such as the loss of benefits or privileges described above, give rise to a constitutional violation.  As clarified by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), the denial of certain privileges to inmates, even if "concededly punitive," do not automatically trigger due process protection.  *Id.* at 487.  Rather, the determinative factor is whether the conduct at issue presents "a dramatic departure from the basic conditions of the inmate's sentence," and such a departure is not present here.  *See id.*  Moreover, prison inmates have no constitutional right to receive the benefits or privileges in issue here, such as any particular classification or housing assignment.  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Therefore, any adverse consequences that may occur to Petitioner

as a result of his withdrawal from the IFRP program do not trigger a constitutional claim.

### III.   RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Application for Habeas Corpus Relief (Doc. No. 1), be **DENIED**; and

2. This action be dismissed with prejudice.

Date: December 15, 2008

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 30, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.